IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY STEVENSON, BEVERLY STEVENSON D/B/A DENNIS FELITSKY CONSTRUCTION, AND BEVERLY STEVENSON D/B/A SHINY DIMES CLEAN UP, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>THE HARFORD MUTUAL INSURANCE COMPANY, <br><br>Defendant. | Civil Action No. 23-1656 <br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Currently pending before the Court are Plaintiff's Motion for Summary Judgment (Docket No. 40) and Defendant's Motion for Summary Judgment (Docket No. 43) in this breach of contract action. Plaintiff's Complaint seeks additional Under Insured Motorist ("UIM") coverage allegedly owed through the Harford automobile insurance policy in effect at the time of her accident-related injury (the "Policy").[1] Both parties seek a determination in their favor as to Plaintiff's entitlement to "stacked" coverage under the Policy where Defendant failed to obtain any new waivers of such

---

[1] Plaintiff's Complaint was comprised of two counts: Count I, alleging breach of contract and Count II, alleging a bad faith claim. (Docket No. 1-1). Count II was dismissed by the parties' Stipulation, which reserved Plaintiff's right to seek reinstatement of such claim if the Court concluded that the Harford policy provided stacked UIM coverage. (Docket No. 26). *See also* Docket No. 44 at 2.

coverage subsequent to Plaintiff Beverly Stevenson's initial execution of a waiver form ("Waiver") in 2012.[2]

Upon careful consideration of the parties' submissions and the evidence of record, and for the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

In brief, the Court observes that Plaintiff applied for and was issued a commercial automobile insurance policy, completed and received documents indicating the commercial nature of the policy, requested and obtained multiple changes in both the number of vehicles insured and the vehicles themselves,[3] and received multiple policy revisions and annual renewal related documents from Defendant from the time of the policy's initial issuance in 2012 through the time of her March 2018 accident.[4] It concludes, in accordance with Pennsylvania law, that Defendant had no obligation under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S. § 1738, to obtain subsequent stacking waivers on the commercial automobile policy at issue. Having made the determination that Defendant, having tendered its UIM policy limits, is entitled to summary judgment,[5] the Court need not address the parties' differing positions as to either (a)

---

[2] "Stacked" UIM coverage refers to the ability to increase the insured's UIM coverage by aggregating the amounts appliable to each vehicle insured under a given policy. *See e.g.*, *Barnard v. Travelers Home & Marine Ins. Co.*, 216 A.3d 1045, 1047 n.2 (Pa. 2019) ("'stacking' allows the insured to aggregate the UIM or UM coverage limits on all of her insured vehicles to increase the amount of coverage available in the event of an accident").

For ease of reference, Plaintiffs (Stevenson and her business entities) will be referred to collectively as "Plaintiff" and Beverly Stevenson will sometimes also be referred to as "Stevenson". *Cf.* Docket No. 1-1 at ¶ 1 (Stevenson "was the owner and representative of those companies who contracted with Defendant").

[3] All vehicles insured at the time of the incident were titled in the name of Stevenson's limited liability corporation, Shiny Dimes Clean Up ("Shiny Dimes"), which was formed in 2017. (Docket No. 42 at 5).

[4] Plaintiff Stevenson makes no allegation and provides no evidence that she was billed at individual/personal policy coverage rates or was billed for stacked coverage. She also makes no allegation and provides no evidence that she or her insurance broker/agent, Mitchell Insurance ("Mitchell"), communicated an objection or intention that Plaintiff's policy either be a non-commercial policy or provide stacked coverage. *Cf.* Docket No. 13 at 2 (Plaintiff's Brief in Support of Remand) ("In 2012, when Plaintiff Beverly Stevenson applied for commercial automobile insurance . . .").

[5] *See* Docket No. 1-1 at ¶ 82 ("Subsequently, Defendant Harford Insurance tendered the limits of the UIM coverage under its policy to Stevenson without prejudice" to continuation of her claim for additional coverage); Docket No. 13 at 2 ("Defendant Harford has paid $50,000 in UIM benefits . . . .").

other asserted grounds for summary judgment in a party's favor or (b) the amount of stacked coverage to which Plaintiff would otherwise be entitled.

## II.  PROCEDURAL BACKGROUND

Plaintiff's Complaint was filed in the Butler County Court of Common Pleas and removed to this Court by Defendant on September 18, 2023. (Docket Nos. 1 and 1-1). Its core allegation is that "from 2012-2018, [Defendant] failed to obtain a proper and valid stacking waiver and . . . by default, must provide uninsured motorist coverage to the limit of the vehicles, as stacked, under the . . . policy in place at the time of the underlying collision." (Docket No. 1-1 at ¶ 78). Plaintiff asserts coverage due in the amount of $200,000 (4 vehicles x $50,000 UIM). (*Id.* at ¶¶ 79, 83). Defendant's Answer was filed September 29, 2023 and raised three affirmative defenses, *i.e.*, (1) Plaintiff elected lower-than-available limits of UIM coverage, (2) stacking was not available under Harford's commercial policy coverage and/or (3) it was effectively waived. (Docket No. 7). Plaintiff's October 16, 2023 Motion to Remand (mistakenly characterizing her action as one for declaratory judgment) was denied on December 1, 2023. (Docket Nos. 12 and 25).

The parties thereafter filed their pending cross Motions for Summary Judgment, Briefs in Support and in Opposition, Replies and Sur-Replies. *See* Docket Nos. 40-41, 43-46, 49-51. They also filed a Joint Factual Stipulation, followed by Defendant's Concise Statement of Material Facts and Plaintiff's Counterstatement thereto. *See* Docket Nos. 39, 42, 48. Evidentiary submissions were provided as exhibits to many of the filings and the motions are fully briefed and ripe for disposition.

## III.  FACTUAL BACKGROUND

In February 2012, Stevenson completed a "Commercial Insurance Application", identifying the applicant as her sole proprietorship "Beverly Stevenson dba Dennis Felitsky

Construction," with a Federal Employer's Identification Number ("FEIN") of 27-2892739.[6] The application requested a $500,000 limit of coverage for bodily injury and property damage liability and non-stacked coverage for uninsured and underinsured motorists in the amount of $25,000 per person and $50,000 each accident. (Docket Nos. 39 at ¶¶ 1-6; 39-1; 39-2; 7 at ¶¶ 10-11).[7] On March 21, 2012, Stevenson executed additional documents, including a Harford "Pennsylvania Commercial Auto Option Selection Form" and "Rejection of Stacked Underinsured Coverage Limits". (Docket No. 7-3).

Harford accepted the application and forms and issued a commercial insurance policy numbered 6044140, effective March 25, 2012 to March 25, 2013. (Docket Nos. 39 at ¶ 7; 39-3; 7 at ¶ 15). In October 2012, Stevenson increased the limit of coverage for bodily injury and property damage liability to $1,000,000 and executed a form electing a $50,000 coverage limitation for uninsured and underinsured motorists. (Docket Nos. 39 at ¶¶ 8-9; 39-4; 7 at ¶¶ 16-17).[8] Plaintiff's auto liability coverage was written on CA 00 01 (10/13), the "Business Auto Coverage" Form, and UIM coverage was provided on form CA 21 93 (10/13), "Pennsylvania Underinsured Motorists Coverage – Nonstacked." (Docket No. 7 at ¶ 65) (citing exhibits).

Over the next six years, vehicles were added to and deleted from the policy (which sometimes covered as few as three and as many as six vehicles), annual renewals were issued

---

[6] The application describes the nature of business as "BEVERLY STEVENSON – POST CONSTRUCTION HOUSE CLEANING – MAINTAINS MODEL HOMES – CLEANS APARTMENTS FOR PROPERTY [MANAGER] . . . DENNIS FELITSKY CONSTRUCTION – GENERAL CARPENTRY & REMODELING – NO SUBS – ONLY DO ROOF IF IN CONJUNCTION WITH DECK – 1 HELPER . ." (Docket No. 7-1 at Application 2).

[7] Stevenson elected these lower limits on the "Pennsylvania Commercial Auto Coverages/Limits Section" form attached to the application. (Docket Nos. 7 at 3; 7-1 at Application 5).

[8] *See Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 901 (Pa. 2011) ("[T]he most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application.") (cited in Docket No. 49 at 3).

(frequently with a new policy number assigned by Harford). Stevenson requested coverage for each vehicle and Harford never obtained another signed waiver of stacked UIM coverage in connection with any of these events. (Docket No. 39 at ¶¶ 10-30).[9] Stevenson relied on the recommendations of Mitchell Insurance Agency, which operated as her agent, prepared and oversaw all forms and made all communications with Harford; Harford's only direct contact with Plaintiff was its transmission of policies. (*Id.* at ¶ 39).[10]

In January 2017, the named insured on the policy was changed to Stevenson's newly-formed limited liability corporation, "Shiny Dimes Clean-Up, LLC". (Docket No. 39 at ¶ 25). In March 2017, Stevenson completed a Contractor Survey form providing business information for Shiny Dimes. (Docket Nos. 39 at ¶ 35; 39-6). Stevenson was the "sole member" of Shiny Dimes, all of Shiny Dimes' vehicles were insured by Harford, and all of the vehicles insured under the Policy during the relevant period were titled in Shiny Dimes. (Docket Nos. 39 at ¶¶ 32, 34, 35; 39-5). At the time of its March 2018 renewal, the Policy covered three vehicles and on or about May 4, 2018, a fourth vehicle was added. (Docket Nos. 39 at ¶¶ 28-29; 39-5 (Commercial Lines Policy No. 6067131, for "Business Auto Coverage")).[11]

---

[9] Stevenson further alleges that she requested coverage for each vehicle within 30 days of its acquisition and that each was added "by way of endorsement, and not by definition of 'New Acquired Auto' clause". (Docket Nos. 39 at ¶ 30; 1-1 at ¶ 71). While potentially relevant to a determination of an amount of stacked coverage owed, the allegations are not relevant to the Court's determination of the inapplicability of Pennsylvania's statutorily required default stacking coverage in the commercial insurance policy context. *Cf. e.g.,* Docket No. 1-1 at ¶ 72. *Compare* Docket No. 49 at 4-5 with Docket No. 50 at 9-10.

[10] Although Plaintiff's Complaint includes a blanket allegation that Mitchell was acting as Defendant's agent, or "ostensible agent and/or servant", that allegation is unsupported by either facts or law in the evidentiary record and Plaintiff's subsequent pleadings. *See* Docket No. 1-1 at ¶¶ 7-8; *cf. id.* at ¶ 6 ("[I]n this case, [Defendant] permitted [Mitchell] to sell Harford automobile insurance to [Plaintiff] and her companies.").

[11] The Policy reflects continuation of the commercial coverage elected in October 2012, *i.e.*, a coverage limitation for bodily injury and property damage liability of $1,000,000 and a $50,000 coverage limitation for uninsured and underinsured motorists.

5

On May 8, 2018, Stevenson and her sister, Sharon Sgro, were seriously injured in an accident which occurred while Stevenson was driving a vehicle covered under the Policy. That vehicle was struck by a truck owned and insured by, and being driven by an employee of, Budget Pest Control ("BPC"). Said employee, Dakota Shoeneman, was solely at fault for the accident. (Docket Nos. 39 at ¶ 38; 7 at ¶ 40-42, ). BPC's insurer paid its limits of liability of approximately $500,000, allocated between Stevenson and Sgro. (Docket No. 1-1 at ¶¶ 55, 63). Harford subsequently tendered its undisputed UIM policy limits of $50,000 per occurrence to Stevenson and Sgro in equal amounts. (Docket Nos. 44 at 7; 47 at 14).[12]

## IV.  APPLICABLE STANDARDS OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,[13] the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) & (c)(1)(A). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of

---

[12] That is, Plaintiff received the UIM coverage for which she unambiguously applied and which was issued and in place. *See supra* at 4 and n. 8; Docket No. 45 at 7-8 (citing *Farmland Mut. Ins. Co. v. Sechrist*, 769 F. App'x 66, 71 (3d Cir. 2019)).

[13] *See e.g.*, *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007) (noting that the court must interpret the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor).

record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id*. at 249-50 (internal citations omitted). *See also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005)

In summary, the inquiry under a Rule 56 motion is whether the evidence of record (a) presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution or (b) is so one-sided that the movant must prevail as a matter of law. It is on this standard that the Court has reviewed the parties cross-motions and responses thereto.

V.      ANALYSIS

In Pennsylvania, the MVFRL, at 75 Pa. C.S. § 1731(a), mandates that any "motor vehicle liability insurance policy" issued or delivered in the Commonwealth with respect to a "motor vehicle registered or principally garaged" therein offer "uninsured motorist and underinsured motorist coverages", the purchase of which may however be waived by an insured. The Pennsylvania Supreme Court has interpreted Section 1731 to require inclusion of UIM coverage

7

in an amount equal to the limit of liability coverage, unless there is a valid request for lower UIM limits under section 1734. *Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1226 (Pa. 2007); *Farmland Mut. Ins. Co. v. Sechrist*, 769 F.App'x 66, 70 (3d Cir. 2019).[14] In addition, the holder of a multi-vehicle policy may increase her available UIM coverage by electing to "stack", or aggregate, her UIM limits for each vehicle.

The availability of stacking is governed by § 1738 of the MVFRL, which states in pertinent part:

> (a) Limit for each vehicle. — When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

75 Pa. C.S. § 1738(a). *See also Stockdale v. Allstate Fire & Cas. Ins. Co.*, 441 F. Supp. 3d 99, 102 (E.D. Pa. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Powell*, 879 F. Supp. 538, 540 (W.D. Pa. 1995)). An insured may also waive stacked coverage in favor of a lower premium by execution of a statutorily prescribed waiver form. *See* 75 Pa. C.S. §1738(b), (d).[15]

As Plaintiff observes as a crux of her claim, "[i]n *Sackett v. Nationwide Mut. Ins. Co.*, 591 Pa. 416, 919 A.2d 194 (Pa. 2007) ("*Sackett I*"), the Pennsylvania Supreme Court found that [under § 1738] an insurance company's obligation to secure a stacking waiver was not limited to the initial

---

[14] "A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa. C.S. § 1734. The Supreme Court of Pennsylvania has found this language to be 'clear on its face" and require only a "writing requesting the same from a named insured." *Orsag v. Farmers New Century Ins.,* 15 A.3d 896, 900 (Pa. 2011) (quoting *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 153 (Pa. 2002)). *See* Docket No. 44 at 5-6.

[15] The relevant statutory provisions make no express mention of the applicability of section 1738's default stacking mandate in a commercial/business automobile insurance context. As discussed below, however, the language required for an effective waiver under section 1738 indicates that the General Assembly did not intend the statute's protective mandate to apply to commercial insurance purchases. *See* 75 Pa. C.S. § 1731(c) (providing waiver language for insured's execution "for myself and members of my household"); *infra*, n. 16.

purchase of an insurance policy." Docket No. 50 at 9 (also citing *Barnard v. Travelers Home & Marine Ins. Co.*, 216 A.3d 1045, 1051 (Pa. 2019) ("If an insurance company does not obtain a stacking waiver [whenever an insured purchases UIM coverage], the amount of UIM coverage available . . . is 'the sum of the limits for each motor vehicle as to which the injured person is an insured.'"). From this, Plaintiff avers that because Defendant "failed to secure the proper waivers for non-stacking" over the six (6) years that she added vehicles to her policy, Defendant's "omission requires [that it] honor its full contractual obligation" for stacked UIM coverage. (Docket No. 47 at 1). Plaintiff's analysis under – and extensive citations to – this and other case law regarding application of the statutory provisions to *personal* automobile insurance policies is, however, inapposite. *See generally*, Docket No. 47 at 11-13.

In the same year as its first decision in *Sackett*, the Pennsylvania Supreme Court also held – in a case involving coverage under a "Business Automobile Policy" – that "the General Assembly did not intend to mandate the stacking of [UIM] coverage under commercial fleet policies pursuant to Section 1738 of the MVFRL." *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 307 (Pa. 2007); *see also Webb v. Discover Prop. & Cas. Ins. Co.*, 2009 WL 3053686, *1 (M.D. Pa. Sep. 22, 2009); Docket No. 45 at 2. More specifically, the Pennsylvania Supreme Court explained:

> [W]e discern the intent of the General Assembly by consideration of former law on this subject. While the MVFRL was enacted in 1984, Section 1738 was only added in 1990. At the time of the 1990 amendment to the MVFRL, there already existed a body of decisional law holding that stacking of uninsured and underinsured motorist coverage did not apply to commercial fleet policies. *See Miller; see also Lastooka v. Aetna Insurance Co.*, 380 Pa.Super. 408, 552 A.2d 254 (1988); *Thompson v. Royal Insurance Co.,* 361 Pa.Super. 78, 521 A.2d 936 (1986); *Boris v. Liberty Mutual Insurance Co.*, 356 Pa.Super. 532, 515 A.2d 21 (1986). Indeed, one year before the addition of Section 1738 to the MVFRL, our Court, citing *Miller,* affirmed the prohibition against requiring the stacking of uninsured motorist coverage under a fleet policy. *Selected Risks Insurance Co. v. Thompson*, 520 Pa. 130, 552 A.2d 1382, 1387 (1989).

9

> It is well established that 'statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.' *Carrozza v. Greenbaum*, 591 Pa. 196, 916 A.2d 553, 566 (2007) (quoting *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886, 887 (1976)). Thus, the Court will not disturb established legal principles without express direction from the Legislature. *Carrozza*, 916 A.2d at 565–66.

*Everhart,* 938 A.2d at 306-307.[16]

Moreover, the Court concurs with the analysis of its sister Court for the Middle District of Pennsylvania in the recent and analogous case of *Dayton v. Emp'rs Mut. Cas. Co.*, 2023 WL 2761302 (M.D. Pa. Apr. 3, 2023) ("Plaintiff contends that the policy is not a commercial fleet policy for three reasons: the policy had signed UM/UIM forms from 2011; the policy does not specifically state "fleet"; and the policy only covers seven vehicles."). Upon consideration, the Court held that the insured's Business Automobile Policy – which covered from seven to eight vehicles at any given time during its five-to-six-year life – was a commercial policy excluded by the General Assembly from the purview of section 1738's stacked coverage default. *Id.* at **2-3 (concluding that "[c]ombining the language contained within the waiver with the prior existing law in Pennsylvania, the Supreme Court of Pennsylvania held that the requirements of § 1738 *do not apply to commercial policies*") (emphasis added).

In so holding, the Court observed that the absence of the word "fleet" did "not change the nature of the policy as a commercial fleet policy" within the meaning of *Everhart*. *Id.* at 3 (noting that the subject policy in Everhart was entitled "Business Automobile Policy" while in *Dayton* the policy declarations page was entitled "Commercial Auto Declarations – Business Auto" with a commercial entity as named insured) (citing *Everhart*, 938 A.2d at 301). And it rejected the

---

[16] The Court further explained that the waiver provision contained in § 1738(d)(2) states: "By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household," which reflects that the General Assembly was not referring to commercial policies, but only to personal auto policies. *Id.* at 305.

10

plaintiff's assertion that the policy, as one covering only seven or eight vehicles, did not constitute a commercial fleet. *Id.* at 3 (noting that plaintiff did "not cite any case law explaining the required number of vehicles" and "looking to *Everhart*" to conclude that the policy at issue was "commercial in nature and ha[d] numerous vehicles" and "[a]s such, [was] a commercial fleet policy").

Finally, the *Dayton* Court rejected Plaintiff's argument – which was, as here, also "devoid of any case law" – that "having an insured sign a waiver of stacking form, even if inapplicable, reshapes the policy from a commercial policy into a personal policy". *Id.* at *2 (further concluding that "[i]f anything, the waiver of stacking was an unnecessary step").[17] *See also Universal Underwriters Ins. Co. v. Swenson,* 2024 U.S. Dist. LEXIS 70627, at *9 (M.D. Pa. Apr. 18, 2024) (cited in Docket 44 at 9-10) (holding that the commercial insured's execution of a form rejecting stacked UIM coverage was sufficient to eliminate any entitlement to stacking); Docket No. 44 at 10 (correctly averring that the stacking waiver signed by Stevenson at the time of policy inception remained enforceable). *See also generally* Docket No. 45 at 7.

The Court sympathizes with Plaintiff's deposition testimony and other averments that she did not "understand insurance", relied on the advice of and documentation prepared by her agent at Mitchell (to whom she "gave full reign as far as the insurance was concerned"), and merely placed the documents she received from Defendant in a "filing tote" and paid the bills which she received. *See generally,* Docket No. 48. But the proffered averments, *i.e.*, that Stevenson was so

---

[17] *Cf. Egan v. USI Mid-Atl., Inc.,* 92 A.3d 1, 11 (Pa. Super. 2014) (clarifying that while, under *Everhart*, commercial policies are excluded from the statutory default of *stacked* UM/UIM coverage absent compliance with the specific waiver requirements of section 1978, differing considerations weighed in favor of interpreting the General Assembly's intended applicability of the provisions of section 1731 – requiring that *non-stacked* UM/UIM coverage be offered (and as a corollary, declined) – to commercial policies).

As noted in text, the commercial policy herein included specific UM/UIM coverage elected by Plaintiff, who also executed a stacking waiver.

11

unsophisticated as to fail to understand the labeling/terms of her application and policy documents as "Commercial" and "Business", are simply inadequate to Plaintiff's claim for a breach of contract by Defendant premised on an entitlement to stacked UIM coverage under the Policy.[18] Both Plaintiff's application for and Defendant's provision of commercial liability insurance coverage, *i.e.*, a Business Automobile Policy, and the UIM coverage being billed and provided thereunder, were unambiguous.[19]

As noted in Section I and elsewhere, *supra*, having made the determination that Harford was not required to obtain any subsequent stacking waiver from Plaintiff, the holder of a commercial policy, and is therefore entitled to summary judgment,[20] the Court need not further address the parties' differing positions as to other asserted grounds for summary judgment. Nor need it further address their disputes regarding the amount of stacked coverage to which Plaintiff might otherwise be entitled as the holder of a personal automobile insurance policy.

---

[18] Plaintiff's nature-of-business assertions – that Stevenson's small house cleaning business (for which she obtained an EIN "because her accountant told her to, for tax purposes") is not akin to a "commercial" business under *Everhart* – similarly fail to raise a question of fact material to her claim. *Cf.* Docket No. 50 at 2; *id.* at 4 ("At no time did Defendant Harford send her any other documents which would indicate that they knew they were dealing with a more sophisticated corporate entity then Beverly Stevenson . . . ."). *Compare* Docket No. 45 at 2-5 (Defendant's responses to Plaintiff's invalidity of contract arguments premised on her lack of commercial sophistication, with which the Court largely concurs).

[19] As Defendant fairly observes:

> Everything, from policy inception to the time of the accident, points towards this policy being commercial in nature. There is nothing about the application or the inherent aspects of the policy which suggest that it should properly be designated as personal in nature. Stevenson's argument . . . does not address any of these realities, or provide the Court with a good reason for disregarding them.

Docket No. 45 at 4.

[20] *See supra*, n. 5; Docket No. 13 at 2 ("Defendant Harford has paid $50,000 in UIM benefits . . . ."). *See also* Docket No. 44 at 15 (Harford's "counsel tendered $25,000 to Stevenson's counsel . . . the full amount of the coverage available to Stevenson under the Harford Policy. . . . Stevenson signed an application that requested UIM coverage in the amount of $25,000 per person and $50,000 per accident. This election remained effective. Moreover, stacking was not available because Stevenson signed a waiver of stacking. . . . [U]nder *Everhart*, the requirements of § 1738 do not apply. . . .").

## VI. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket No. 43) is GRANTED and Plaintiff's Motion for Summary Judgment (Docket No. 40) is DENIED. An appropriate Order follows.

Dated: December 17, 2024

> */s/Nora Barry Fischer*
> Nora Barry Fischer,
> Senior U.S. District Judge

cc/ecf: All counsel of record